## Delos A. Blodgett v. Sylvester F. Dwight.

*Equitable jurisdiction—Bill to quiet title—Disclaimer.*

Equity will take jurisdiction of a suit involving land worth in itself less than $100 if it furnishes advantages—such as a riparian right—making it worth more.

Different grantees obtained deeds of the same land from different persons of the same name. One brought suit to quiet his title, and the other, though professing to be willing to do justice, did not disclaim but answered and thereby occasioned costs which might have been avoided by a disclaimer. He was required to release to the complainant. *Held* that his expres-

sions of willingness to settle for a small *bonus* did not justify his failure to disclaim, especially as he had good reason to suppose that his grantor was not the actual owner of the land.

A quit claim deed from a person of the same name as the actual owner of the land has the legal effect of a constructive fraud, and if dishonest resembles forgery.

Error to Osceola. Submitted April 2 and 3. Decided April 9.

BILL TO QUIET TITLE. Defendant appeals.

*Burch, Beardsley & Judkins* and *R. M. Montgomery* for plaintiff in error. A recorded deed is a cloud on title, *Holbrook v. Winsor,* 23 Mich., 394.

*Sylvester F. Dwight,* defendant in error, in person. Equity will not take jurisdiction where the value of the subject matter is not over $100 (Comp. L., § 5059; *Gamber v. Holben,* 5 Mich., 331) estimated at the market price, *Bydenburgh v. Welsh,* 1 Baldw., 340; *Smith v. Griffith,* 3 Hill, 333; *Dana v. Fiedler,* 12 N. Y., 47.

CAMPBELL, C. J. This is a bill to set aside the claims of Dwight to a small parcel of land near Hersey, Osceola county, on the ground that having been patented by the United States to one Isaac Pettit, who conveyed them to complainant, defendant had procured a conveyance from another Isaac Pettit, who had no real interest in the land, and recorded it so as to cloud the title of record.

The United States sale was made in 1857 and completed by patent in 1858 to Isaac Pettit, of Wellington, Canada. Complainant's grantor is claimed to have lived in Wellington county in Canada, in 1857, and to have removed to Michigan and resided here since 1858. Defendant's grantor who is claimed, but not proven to have lived in Wellington at one time, was heard of in 1871 by defendant as living in Simcoe, Canada, and defendant visited him and procured a quit claim from him for ten dollars—he not making any claim of title and professing no knowledge of any, but stating that a son

of his had once come to Michigan with money to buy lands, though never having informed him of his purchase. He was not sworn and this is hearsay.

Complainant bought of Isaac Pettit, the Michigan resident, some months after the purchase made by defendant of the other Isaac, but had for several years had care of the land for purposes of paying taxes. The parcel bought by complainant was a small portion of the entire tract entered by Isaac Pettit. It lies upon Muskegon river directly opposite other lands of complainant, extending about half a mile on the river, although very narrow.

Upon the testimony we cannot doubt that complainant's grantor is the genuine Isaac Pettit, and that defendant's grantor had no interest in the land. There was some dispute whether the land was worth as much as $100 when suit was brought, but considering its value to complainant as giving him a complete riparian ownership at an important point on the stream, we are satisfied its value exceeds that sum. This being so the jurisdiction is made out, and the right established to avoid the cloud on the title.

There is claimed to be some hardship in decreeing a release by defendant when he claims to have been willing all times to do justice. We are inclined to think he purchased in the belief that he had found the true owner, but the circumstances were such as to give him very strong grounds of suspicion, to say the least. It appears that Blodgett had been looking after the taxes, and it was evident that defendant's grantor did not claim to have paid them or taken any interest in the land, as he did not suppose he owned it. It is manifest Dwight did not in any way exert himself to ascertain who was the person in whose behalf Blodgett was acting, and from the relations of the parties it is probable he did not care to. He paid out on this particular lot—supposing it to average with the rest—something less than ten dollars, and at least a part of that was

paid after he knew of complainant's grantor's claim. Instead of disclaiming he saw fit to answer and put complainant's rights in issue, and he has contested the case diligently throughout and appealed it, and thereby largely increased the expenses of both parties. Had he disclaimed all this would have been avoided. We do not think we can regard his expressions of willingness to settle on terms which required a payment from complainant of what would have been a bonus—although a small one—for the release of a bad and unfounded title, as justifying him in failing to disclaim. It is unfortunate that such a litigation should have been created or prolonged, but complainant without a disclaimer had no means of getting the cloud removed from his title, which had been involved by the record of a deed which on the record would appear to have come from his grantor. This however innocently intended, had the legal effect of a constructive fraud, which if dishonest in fact would have resembled forgery.

We think the decree should be affirmed with costs.

The other Justices concurred.